UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WILLIAM CLANTON,
                              Plaintiff,

                           DECISION AND ORDER
-v-                           11-CV-6382 CJS

NURSE KILLINGER, et al.,
                              Defendants.
_____

## INTRODUCTION

William Clanton ("Plaintiff"), a prison inmate in custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), is suing pursuant to 42 U.S.C. § 1983, alleging that DOCCS staff violated his federal constitutional rights by exhibiting deliberate indifference to his medical needs. Now before the Court is Defendants' motion to dismiss the complaint (Docket No. [#7]). The application is granted.

## BACKGROUND

Plaintiff is suing DOCCS medical staff employed at both Attica Correctional Facility ("Attica") and Wyoming Correctional Facility ("Wyoming"). The Complaint maintains that in January, 2010, a nurse at Attica told him that, according to his medical file, he had been diagnosed with cirrhosis of the liver some fourteen years earlier, in 1996, by medical staff at Elmira Correctional Facility ("Elmira"). The Complaint alleges that Plaintiff became very distraught at this news, since he had never been told of that diagnosis, and that he subsequently developed headaches, high blood pressure, anxiety, depression and a skin rash, due to stress caused by the diagnosis.

The Complaint alleges that Plaintiff's aunt attempted to obtain Plaintiff's medical records from Attica, but someone there denied her request. The Complaint indicates that Plaintiff wrote to Defendant Dr. Laskowski, a doctor at Attica, about his cirrhosis diagnosis and the anxiety, headaches, rash and high blood pressure, but that Laskowski's only response was to indicate that Plaintiff's skin disorder was not related to his other medical problems. The Complaint further indicates that in April 2010, defendant Nurse Killinger notified him that he would be meeting with a clinician to discuss his health problems.

The Complaint further contends that in November, 2010, Plaintiff met with defendant "John Doe," the Facility Health Director at Attica, who told him that he did not actually have cirrhosis of the liver, and that the information concerning such a prior diagnosis was mistaken.

Finally, the Complaint indicates that Plaintiff was subsequently transferred from Attica to Wyoming, and that at Wyoming, defendant Nurse Mohring "did nothing" concerning Plaintiff's medical problems, and did not research the circumstances concerning the conflicting cirrhosis diagnoses.

Liberally construing the Complaint which Plaintiff drafted *pro se*, it indicates that he is presently unsure [1] about whether he actually has cirrhosis of the liver, since no one has shown him medical records or testing data to confirm the absence or presence of such disease. In this regard, it seems that Plaintiff contends that Defendants caused him psychic harm by failing to give him a satisfactory explanation as to whether he has

---

[1] Plaintiff's counsel insists that the Complaint indicates that Plaintiff actually has cirrhosis of the liver, but the Court does not agree.

a potentially life-threatening medical condition. Plaintiff further contends that Defendants were deliberately indifferent to his serious medical needs, with regard to both the cirrhosis diagnosis and the ensuing anxiety, depression, high blood pressure, rash and headaches, by failing to treat him. Plaintiff sued Defendants in both their official and individual capacities.

On March 27, 2012, Defendants filed a motion to dismiss (Docket No. [#7]), which has three aspects. First, Defendants maintain that the "official capacity claims" should be dismissed. Second, Defendants contend that the Complaint fails to allege that they were personally involved in the alleged constitutional violation. And third, Defendants argue that a mis-diagnosis is insufficient to establish a deliberate-indifference medical claim.

On February 28, 2013, Plaintiff filed a memo of law in opposition to the motion to dismiss. Such memo does not oppose the portion of the motion seeking dismissal of the official capacity claims, and the Court therefore deems such claims abandoned. Plaintiff maintains, however, that the Complaint sufficiently avers that Defendants were personally involved in the alleged constitutional violations. Plaintiff also contends that the Complaint adequately alleges that Defendants were deliberately indifferent to his serious medical needs, in two ways. First, Plaintiff indicates that the Complaint states that he in fact does have cirrhosis of the liver, and that Defendants failed to treat him for that condition. Second, Plaintiff maintains that the Complaint adequately pleads that Defendants failed to treat his skin rash, high blood pressure, headaches, anxiety and depression.

DISCUSSION

Defendants have moved to dismiss the complaint for failure to state a claim, and the standard for such motions is well settled:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint,[2] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint

---

[2] The Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000). Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

The Complaint purports to state 8th Amendment "deliberate indifference" medical claims, and the law concerning such claims is clear:

> In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs. This standard incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind.
>
> Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation. [T]he Supreme Court [has] explained that the Eighth Amendment's prohibition on cruel and unusual punishments encompasses the deliberate failure to treat a prisoner's serious illness or injury resulting in the infliction of unnecessary pain and suffering. Because society does not expect that prisoners will have unqualified access to health care, a prisoner must first make this threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care. Similarly, a prisoner must demonstrate more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability. An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety, a state of mind equivalent to the familiar standard of 'recklessness' as used in criminal law.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir.2003) (citations and internal quotations omitted). Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation. *See, Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."). Similarly, negligence constituting medical malpractice, without more, will not establish a constitutional claim. *Id*. (citation omitted).

In the instant case, liberally construing Plaintiff's complaint, he maintains that in 2010, he was told by a non-party nurse at Attica that he had been diagnosed with cirrhosis of the liver back in 1996 at Elmira. Plaintiff told the nurse that she was mistaken, but he also contends that he became worried about the possibility that he actually had cirrhosis, to the point that he developed headaches, a rash and hypertension. Plaintiff's assertion that a causal nexus exists between those events is purely conclusory, and appears to be only his opinion. In that regard, for example, he indicates that Dr. Laskowski told him that his skin rash was not related to any other disorder. In any event, Plaintiff indicates that he received "sick call" visits for those alleged stress-related ailments, and that Defendants have provided him with care including blood pressure screening and a "skin biopsy." Ten months after being told that he had cirrhosis, Plaintiff met with Attica's Facility Health Director, who told him that he did not have cirrhosis, and that the reference to such a diagnosis was "a mistake." However, Plaintiff seems unconvinced by that assertion, and maintains that Defendants should have "researched" the matter sooner and provided him with a better explanation.

*See*, Complaint [#1] p. 5(b) ("First, I was informed that I was specifically diagnosed with cirrhosis of the liver in 1996 and now, without any specifics, I was being told the diagnosis was a mistake. . . . No reassurance comes from a statement which unsupported, states, the past diagnosis was all a mistake."). Plaintiff filed an inmate grievance solely concerning the liver diagnosis, the denial of which was ultimately upheld by the Central Office Review Committee ("CORC"), which advised him that he could always "review, obtain copies and challenge the accuracy of his medical records in accordance with Health Services Policy Manual Item #4.10". *See*, attachments to Complaint [#1]. There is no indication that Plaintiff ever filed a grievance concerning the alleged headaches, stress or hypertension.

The court sympathizes with Plaintiff and recognizes that the false diagnosis must have been very upsetting. The Court also believes that DOCCS, out of common decency, ought to provide Plaintiff with a reasonable explanation for how the mistake was made. On the other hand, it is unclear whether Plaintiff followed CORC's instructions for obtaining his medical records.[3]

However, a mistaken diagnosis does not amount to a constitutional violation, particularly where, as here, none of the Defendants is alleged to have been responsible for the mistaken diagnosis. Plaintiff essentially maintains that Defendants violated his constitutional rights by failing to put his mind at ease over the circumstances that led to

---

[3]The Complaint indicates that Plaintiff asked his aunt to obtain his medical records, and that she was "rebuked by the facility and was given no information." The pleading further states that Plaintiff "was shown no medical records concerning the original diagnosis" and "was given no information," but does not expressly state what attempts Plaintiff made to obtain such information.

the mistake.[4] Plaintiff indicates that he still feels that he is "in the dark" about his condition[5], but he does not plausibly plead facts suggesting that he actually has cirrhosis of the liver. The Court finds that such facts do not plausibly state a constitutional violation. *See, Maqbool v. University Hosp. of Medicine & Dentistry of New Jersey*, Civil Action No. 11–4592 (MLC), 2012 WL 2374689 at *9 (D.N.J. Jun. 13, 2012) ("[I]nconsistencies or differences in medical diagnoses, short delays unaccompanied by arbitrary or unduly burdensome bureaucratic procedures, refusal to consider an inmate's self-diagnoses, to summon the medical specialist of the inmate's choice, or to perform tests or procedures that the inmate desires, to explain to the inmate the reason for medical action or inaction, or to train the inmate to perform medical procedures cannot amount to cruel and unusual punishment.") (citations omitted). To the extent that Plaintiff complains about the lack of treatment for his headaches, rash and hypertension, the Court similarly finds that the pleading fails to state an actionable claim.[6]

CONCLUSION

Defendants' motion [#7] is granted, and this action is dismissed with prejudice. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of

---

[4]The Complaint [#1] states, in pertinent part: "This was a mistake, which warranted that each of the Defendants in their individual and official capacities, take some responsible action to rectify the situation and alleviate the resulting physical injuries, plaguing the Plaintiff on a daily basis for more than a year since being informed of the diagnosis." *Id*. p. 5(d).

[5]Complaint [#1] p. 5(b).

[6]Additionally, although Defendants did not raise this point, Plaintiff admittedly did not exhaust his administrative remedies as to an alleged lack of treatment for those conditions before commencing this action.

Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk of the Court is directed to terminate this action.

    So Ordered.

Dated:    September 18, 2013
              Rochester, New York

                                            /s/ Charles J. Siragusa
                                            CHARLES J. SIRAGUSA
                                            United States District Judge